UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Case No. _____

IN RE APPLICATION OF
E.M.I.S. Finance B.V.
Pursuant to 28 U.S.C. § 1782
For Judicial Assistance in
Obtaining Evidence in this District

### *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782 AND INCORPORATED MEMORANDUM OF LAW

E.M.I.S FINANCE B.V. ("EMIS" or "Applicant") respectfully submits this *ex parte* application for an order for discovery pursuant to 28 U.S.C. § 1782 (the "Application") for the issuance of subpoenas directing Citibank, N.A. ("Citibank"), Deutsche Bank Trust Company Americas ("DBT") and J.P. Morgan Chase & Co. ("J.P. Morgan") to produce documents for use in a reasonable proceeding to be filed by Applicant in the courts of the United Arab Emirates. In support of this Application, EMIS states as follows:

### FACTUAL BACKGROUND

1. EMIS is a special-purpose company incorporated under the laws of the Netherlands and established to issue loan participation notes and similar debt instruments. EMIS is wholly owned by Stichting E.M.I.S. Finance, an independent Dutch foundation. EMIS is utilized for multiple transactions which extend loan credit to international borrowers. *See* Declaration of Sandi Nemet ("Nemet Decl."), attached as Exhibit A, at ¶ 3.

2. EMIS is subject to the laws and capital market regulations of the Netherlands, and is also subject to applicable sanctions laws, including those of the European Union, the United States and Ukraine. Nemet Decl. ¶ 4.

3. EMIS is governed by an independent board of directors with professional backgrounds in finance, asset management and corporate governance. One board member, Guillaume Schreurs, was appointed to the EMIS board by a Dutch court. Nemet Decl. ¶ 5.

4. EMIS is the Issuer of certain debt instruments ("LPNs"), including in particular Series LPN-26 U.S. $50,000,000 8.75 percent Loan Participation Notes due 7 November 2022 (ISIN: XS1907535576) ("the Series 26 Notes") and Series LPN-31 U.S. $50,000,000 9.50 per cent Loan Participation Notes due 15 October 2024 (ISIN: XS2228241175) ("the Series 31 Notes") (together, "the Notes"). The majority of bondholders are Ukrainian entrepreneurs and companies. Nemet Decl. ¶ 6.

5. The terms and conditions of the Series 31 Notes include a requirement that, in acquiring the Notes, each Noteholder represents that it has complied and will comply with "all applicable laws and regulations in each jurisdiction, including, without limitation, all anti-bribery, anti-money laundering and anti-corruption laws and all international and domestic sanctions restrictions." Nemet Decl. ¶ 7.

6. ICU Trading Ltd. ("ICU") is a company incorporated in the British Virgin Islands, and a subsidiary of ICU Holdings Ltd., a BVI-registered investment firm with significant interests in Ukraine. ICU has acquired a substantial position in the Notes, presently holding 42 percent and 52 percent by value of the total amount issued of the Series 26 and Series 31 Notes respectively. It is believed that ICU has increased its original holdings of the Notes by acquiring its interest in the Notes sometime after Russia's invasion of Ukraine in February 2022 and the subsequent imposition of economic sanctions on Russian financial institutions and other businesses by the United States, the United Kingdom and the European Union. Nemet Decl. ¶ 8.

7. EMIS and ICU are presently in a dispute regarding the proper procedures for the removal of the existing Trustee and appointment of a new Trustee to oversee the Master Trust governing the LPNs issued by EMIS. That dispute is currently pending in the High Court of Justice Business and Property Courts of England and Wales. Nemet Decl. ¶ 9.

8. The ultimate beneficial owners of ICU are Makar Paseniuk ("Paseniuk") and Kostyantyn Stetsenko ("Stetsenko"). Upon information and belief, both are residents of the United Arab Emirates. Nemet Decl. ¶ 29.

9. EMIS has learned that, through Paseniuk, Stetsenko and other affiliated agents and subsidiaries, ICU is engaged with and/or otherwise transacting business with entities or individuals that are subject to economic sanctions imposed by the United States, the European Union and/or the Ukrainian government. ICU's business activities appear to be designed to assist or facilitate the transfer of funds or other assets for the benefit of sanctioned entities or individuals, and evade the sanctions imposed by the U.S. Department of Treasury and the European Union. Nemet Decl. ¶ 12.

10. ICU rose to prominence in Ukraine during the presidency of Petro Poroshenko, who in 2014 appointed ICU's then-chairwoman, Valeria Gontareva, to head the National Bank of Ukraine. Mr. Paseniuk has been described as "Poroshenko's personal investment banker." Mr. Poroshenko is now the subject of sanctions imposed by the National Security and Defense Council of Ukraine. Nemet Decl. ¶ 13.

11. Significantly, ICU has a deep and well-established commercial relationship with VTB Bank, a Russian state-owned bank and Russia's second-largest financial institution, and RCB Bank, later renamed to Finstella Ltd. ("RCB"), until recently a subsidiary of VTB Bank, located in Cyprus. Nemet Decl. ¶ 14.

12. VTB Bank has been subject to sanctions imposed by the U.S. Department of Treasury and the European Union since 2014, as a result of Russia's annexation of Crimea. Additional sanctions were imposed against VTB Bank by the U.S., the E.U. and the United Kingdom following Russia's invasion of Ukraine in February 2022. Nemet Decl. ¶ 15.

13. Over the years, investors in ICU have included several executives with VTB Bank (or their spouses). While under the direction and control of Messrs. Paseniuk and Stetsenko, ICU also established an investment fund in the British Virgin Islands called CIS Opportunities Fund SPC Ltd. ("CIS") whose investors included several VTB Bank executives, among them VTB Bank's former president and chairman, Andrey Kostin, who is also on the U.S. sanctions list as a Specially Designated National, and who was indicted in the Southern District of New York for money laundering and sanctions violations in 2024. Nemet Decl. ¶ 16.

14. Mr. Kostin is also subject to sanctions from the Office of Financial Sanctions Implementation ("OFSI") in the United Kingdom. Entities registered in the British Virgin Islands are subject to the United Kingdom sanctions regime. Nemet Decl. ¶ 17.

15. CIS is the sole shareholder of Xomeric Holdings Ltd. ("Xomeric"), a Cyprus entity which was (and may still be) a large shareholder in Burger King Russia (Cyprus) Limited ("Burger King Russia"), a major investor in a joint venture (which included VTB Bank) that controls all Burger King operations in Russia. Nemet Decl. ¶ 18.

16. Upon information and belief, Xomeric has received loans and other funds from CIS in U.S. dollars exceeding $81 million through U.S. intermediary accounts of RCB, VTB Bank's former subsidiary. This includes nearly $66 million received after VTB Bank was initially sanctioned in 2014. Nemet Decl. ¶ 19.

17. Upon information and belief, these funds were transmitted to Xomeric through accounts that RCB maintained with Citibank, N.A. ("Citibank"), Deutsche Bank Trust Company Americas ("DBT") and J.P. Morgan Chase & Co. ("J.P. Morgan") in this judicial district. During this time, CIS and Xomeric were acting under the direction and control of Messrs. Paseniuk and Stetsenko. Nemet Decl. ¶ 20.

18. Public reporting and other information indicates that Xomeric utilized U.S. dollars to purchase its shares in Burger King Russia, including the purchase of shares from a Jersey entity owned by VTB Bank, at a time when VTB Bank was subject to sanctions in the U.S. and E.U. Nemet Decl. ¶ 21.

19. According to its latest annual report, Xomeric sold its entire investment in Burger King Russia (a roughly 35 percent stake) to CIS for $137.76 million. During this time, CIS and Xomeric were acting under the direction and control of Messrs. Paseniuk and Stetsenko. Nemet Decl. ¶ 22.

20. Upon information and belief, ICU also paid about $10 million in U.S. dollars to purchase back its own shares from a BVI-registered entity owned by the wife of Yuriy Soloviev, the former deputy CEO of VTB Bank. Mr. Soloviev is currently listed as a Specially Designated National by the U.S. Department of Treasury and an "involved person" under the United Kingdom's sanctions regime. Nemet Decl. ¶ 23.

21. CIS recently dispersed its stake in Burger King Russia to a series of companies based in Oman and ostensibly owned or controlled by a 19-year-old Kyrgyzstan national named Argen Toktaliev. It is believed that Mr. Toktaliev's companies serve as proxies for the sanctioned Mr. Kostin, Mr. Soloviev, or both, and that Mr. Kostin and Mr. Soloviev remain among the true

beneficial owners of the stake in Burger King Russia. ICU also has business interests in Oman, as do Messrs. Paseniuk and Stetsenko. Nemet Decl. ¶ 24.

22. Given the nature of the transactions described above, and the significant exposure this creates for the Applicant, EMIS, as the Issuer of the Notes held by ICU, EMIS requires enhanced know-your-customer information from ICU, together with full disclosure regarding ICU's historical dealings with sanctioned individuals and entities—both those transactions discussed above and transactions not yet disclosed. In the absence of such disclosure—which is necessary to ensure compliance with sanctions laws and anti-corruption laws as required under the terms and conditions of the LPNs—EMIS remains exposed to material risks, including but not limited to: exposure to sanctions; contamination of its entire program of loan participation notes; serious reputational damage; and potential liability to claims from other participants in its instruments arising from any of the above. Nemet Decl. ¶ 25.

23. EMIS has raised these concerns with ICU, and has repeatedly requested that ICU provide additional information about its business and its acquisition of the Notes. However, ICU has declined or ignored these requests and provided no additional information about its transactions with sanctioned entities and individuals. Nemet Decl. ¶ 26.

24. Other Noteholders have also contacted EMIS and raised concerns about ICU's apparent connections with sanctioned individuals and entities and the potential implications of this for EMIS and the Notes. Nemet Decl. ¶ 27.

25. Based on ICU's documented ties with sanctioned individuals and entities, and ICU's repeated refusal to provide additional information to assuage EMIS's concerns, EMIS has no choice but to take action to protect its own interests and the interests of other Noteholders. Nemet Decl. ¶ 28.

26. For these reasons, EMIS intends to file a legal action against Messrs. Paseniuk and Stetsenko in the United Arab Emirates, where they reside.  Nemet Decl. ¶ 29.

27. Specifically, EMIS intends to assert claims against Messrs. Paseniuk and Stetsenko in the United Arab Emirates under the tort law contained in the UAE Civil Code, Articles 282 and 293.  Nemet Decl. ¶ 30.  Article 282 states that "any harm done to another shall render the actor, even though not a person of discretion, liable to make good the harm."  Liability under Article 282 may extend to the principals or beneficial owners of a company if their actions through that company cause harm to the plaintiff.  Article 293 recognizes that damages to "reputation, social standing, or financial position" are compensable injuries.  *See* Declaration of Wissam Dagher ("Dagher Decl."), attached as Exhibit B, at ¶¶ 6-17.

28. ICU's actions through Messrs. Paseniuk and Stetsenko, including its business transactions with sanctioned individuals and entities, contrary to ICU's representations made in acquiring the Notes that it was following all anti-corruption laws and international sanctions, are in violation of Article 282 of the UAE Civil Code.  Dagher Decl. ¶ 13.

29. ICU's refusal, under the direction of Messrs. Paseniuk and Stetsenko, to comply with EMIS's request for additional information regarding the transactions above and any other transactions with sanctioned individuals and entities, despite ICU's representations made in acquiring the Notes that it was following all anti-corruption laws and international sanctions, are also in violation of Article 282 of the UAE Civil Code.  Dagher Decl. ¶ 13.

30. EMIS has formally instructed the law firms of DLA Piper and Halima Al Marzooqi & Partners Advocates & Legal Consultants ("HMP") to bring these claims against Messrs. Paseniuk and Stetsenko, with HMP possessing rights of audience before the relevant UAE courts.  Nemet Decl. ¶ 31; Dagher Decl. ¶ 19.  The statement of claim has been drafted, and supporting

documents are being translated into Arabic in accordance with UAE court procedures. Nemet Decl. ¶ 31; Dagher Decl. ¶ 19.

31. There are no pre-suit requirements for the contemplated UAE claim, and thus no statutory or procedural impediments under UAE law that would delay its filing. Dagher Decl. ¶ 19.

32. EMIS submits this Application to gather evidence relating to ICU's transactions with sanctioned entities and individuals, including but not limited to transactions of CIS (an ICU subsidiary whose investors include sanctioned persons) with Xomeric. These transactions utilized U.S. intermediary accounts of RCB, VTB Bank's former subsidiary, at Citibank, DBT and/or J.P. Morgan within this district. Accordingly, in this Application EMIS seeks evidence regarding these transactions from Citibank, DBT and J.P. Morgan within this district.

33. In addition, the Applicant seeks evidence regarding Xomeric's purchase with U.S. dollars of shares in Burger King Russia from a Jersey entity owned by VTB Bank, at a time when VTB Bank was subject to sanctions in the U.S. and E.U. Upon information and belief, these transactions utilized U.S. intermediary accounts of RCB at Citibank, DBT and/or J.P. Morgan within this district. Accordingly, in this Application EMIS seeks evidence regarding these transactions from Citibank, DBT and J.P. Morgan within this district.

34. Any evidence regarding these transactions in the possession of Citibank, DBT and J.P. Morgan would be relevant to EMIS's anticipated claims in the UAE, as this evidence is likely to show that (1) Messrs. Paseniuk and Stetsenko, as beneficial owners of ICU and its subsidiaries and affiliates such as CIS and Xomeric, have engaged in transactions with sanctioned individuals and entities in violation of the economic sanctions imposed by the United States, the United Kingdom, the European Union and Ukraine, and possibly other jurisdictions; (2) these transactions contradict ICU's representation in acquiring the Notes that has followed and is

following all anti-corruption laws and international sanctions; and (3) ICU's failure to disclose this information upon request and comply with Applicant's know-your-customer requirements was a deliberate attempt to conceal its transactions with sanctioned individuals and entities and its violations of U.S., U.K., E.U. and Ukrainian sanctions. Nemet Decl. ¶ 33; Dagher Decl. ¶ 18.

35. The information sought in this Application is therefore material to the Applicant's planned claims against Messrs. Paseniuk and Stetsenko in the United Arab Emirates.

## **MEMORANDUM OF LAW**

Based on the information above, EMIS is entitled to this Court's assistance under 28 U.S.C. § 1782 in issuing subpoenas to Citibank, DBT and J.P. Morgan in this district.

An applicant seeking court assisted discovery under 28 U.S.C. § 1782 must establish the following: "(1) the person from whom discovery is sought reside[s] (or [is] found) in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018) (cleaned up).

"Under § 1782, a movant seeking discovery need not show that the 'foreign proceeding' on which it relies is pending or even imminent in order to meet the 'for use' requirement." *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 677 (2d Cir. 2022) (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004)). Rather, the application need only show a "likelihood that proceedings will be instituted within a reasonable time." *Id.* To ensure that a future proceeding is reasonably contemplated, courts look for various indicia of the applicant's intent, including "the legal theory supporting such a proceeding," the "content of his [or her] claims

or a sufficiently concrete basis for liability," or other indicators such as the retention of counsel and the preparation of the necessary pleadings in the foreign jurisdiction. *In re Zouzar Bouka; Vision Indian Ocean S.A.*, 637 F.Supp.3d 74, 85 (S.D.N.Y. 2022), *modified on reconsideration sub nom. In re Bouka*, 654 F.Supp.3d 283 (S.D.N.Y. 2023).

EMIS's application satisfies all of these factors. The parties from whom EMIS seeks discovery are three financial institutions headquartered in this district. The materials sought by the Applicant will be used in a proceeding before a tribunal in the United Arab Emirates, which the Applicant intends to file shortly. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (an applicant need only show that "the requested discovery is something that will be employed with some advantage or serve some use in the proceeding" in order to show that the discovery is "for use" in a foreign proceeding). And EMIS is an "interested person" under 28 U.S.C. § 1782. As discussed above, EMIS intends to bring an action under the UAE Civil Code and participate in that action, including by submitting evidence to support its claims. *See Intel*, 542 U.S. at 256-57 (an "interested person" includes a litigant before a foreign tribunal or a complainant with "participation rights" who "possesses a reasonable interest in obtaining judicial assistance").

The Applicant has stated its intent to bring claims in the United Arab Emirates under Articles 282 and 293 of the UAE Civil Code and articulated the legal grounds for these claims. Nemet Decl. ¶¶ 29-31; Dagher Decl. ¶¶ 6-17. The Applicant has retained counsel in the UAE, the contemplated claim has been prepared, and supporting documents are being translated into Arabic in accordance with UAE court procedures. Dagher Decl. ¶¶ 19-20. The claim can be filed imminently upon the Applicant's instruction, and there are no pre-suit requirements for the contemplated UAE claim, and thus no statutory or procedural impediments under UAE law that

would delay its filing. *Id. Cf. IJK Palm,* 33 F.4th at 680 (prospective claim not "within reasonable contemplation" where there were "significant procedural hurdles" before foreign suit could be filed). These facts confirm that the Applicant's claim is "within reasonable contemplation" and is likely to be instituted in a reasonable time.

When determining whether relief is appropriate under 28 U.S.C. § 1782, courts consider multiple factors including "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which event the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome." *Kiobel,* 895 F.3d at 244 (citing *Intel*, 542 U.S. at 264-65) (internal quotations omitted). These factors all weigh in favor of this Application for assistance with discovery.

First, the U.S. banks that are the subject of this Application, Citibank, DBT and J.P. Morgan, will not be parties to the UAE proceeding, and the requested discovery would not be available in the UAE proceeding absent this Court's assistance.

The receptivity of the UAE to this discovery is not in doubt; indeed, courts of this district have often granted § 1782 applications for use in proceedings in the UAE. *See, e.g., In re Invest Bank PSC*, 567 F.Supp.3d 449, 452 (S.D.N.Y. 2021); *In re W. African Mineral Trading Ltd.*, No. 24 MISC. 114 (DEH), 2024 WL 3862293, at *5 (S.D.N.Y. Aug. 19, 2024); *In re Habib*, No. 21-MC-522 (KMK), 2022 WL 1173364, at *1 (S.D.N.Y. Apr. 20, 2022); *In re Investbank PSC*, No.

20 MISC. 260 (AT), 2020 WL 8512850, at *1 (S.D.N.Y. Dec. 30, 2020).

This request is not an attempt to circumvent proof-gathering restrictions in the United States or in UAE; the requested documents are simply not available in the UAE, and discovery of documents in the possession of U.S. financial institutions is plainly allowable, as the cases cited above make clear. And EMIS's proposed subpoenas are not unduly intrusive or burdensome. The discovery requests are narrowly tailored to discover documents related to specific transactions implicating suspected sanctioned individuals and entities, and the requested information should have been provided to the Applicant upon request to ICU as the holder of the Notes issued by the Applicant.

Ultimately, granting this Application would serve section 1782's "twin aims of providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995). *See also Intel*, 542 U.S. at 252 (same); *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985) (noting that a "liberal intent to provide judicial assistance" has been "acknowledged as a primary statutory goal since section 1782's inception").

In sum, the Application satisfies all of the factors governing judicial assistance in foreign discovery under 28 U.S.C. § 1782.

## CONCLUSION

WHEREFORE, for the reasons, stated above, EMIS respectfully requests that the Court enter an order for discovery pursuant to 28 U.S.C. § 1782 for the issuance of subpoenas directing Citibank, DBT and J.P. Morgan to produce the requested documents for use in a reasonable proceeding to be filed by Applicant in the courts of the United Arab Emirates, and for such other relief as the Court deems just and proper.

Dated: October 24, 2025

                                           Respectfully Submitted,

By: */s/ Kevin C. Kaplan*
      Kevin C. Kaplan, Esq.
      *(pro hac vice pending)*
      Florida Bar No. 933848
      kkaplan@coffeyburlington.com
      Scott A. Hiaasen, Esq.
      *(pro hac vice pending)*
      Florida Bar No. 103318
      shiaasen@coffeyburlington.com
      **COFFEY BURLINGTON, P.L.**
      2601 South Bayshore Drive, Penthouse One
      Miami, Florida  33133
      Telephone: (305) 858-2900
      Facsimile:  (305) 858-5261

      -and-

      */s/ Kayley R. McGrath*
      Kayley R. McGrath
      SIVE, PAGET & RIESEL, P.C.
      560 Lexington Avenue, 15th floor
      New York, New York 10022
      (212) 421-2150
      kmcgrath@sprlaw.com

      *Counsel for Applicant E.M.I.S. Finance B.V.*

## CERTIFICATE OF COMPLIANCE

I certify that this document conforms to the requirements of Local Rule 7.1(c). The length of this brief, excluding the caption, table of contents, table of authorities, and signature blocks, is 3,517 words.

SIVE, PAGET & RIESEL, P.C.

*/s/ Kayley R. McGrath*

Kayley R. McGrath
560 Lexington Avenue, 15th floor
New York, New York 10022
(212) 421-2150
kmcgrath@sprlaw.com

*Counsel for Applicant E.M.I.S. Finance B.V.*